# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 15-4395-jw |
| LUCILLE BROWN JENKINS, | ) | Chapter 13 |
| | ) | |
| | ) | |
| | ) | **NOTICE OF MOTION SEEKING** |
| Debtor. | ) | **11 U.S.C. §362(d) RELIEF[1]** |
| | ) | |

TO:     DEBTOR, TRUSTEE (if applicable), AND THOSE NAMED IN THE ATTACHED MOTION

PLEASE TAKE NOTICE THAT a hearing will be held on the attached motion on:

Date:   Tuesday, December 15, 2015
Time:   9:00AM
Place:   J. Bratton Davis U. S. Bankruptcy Courthouse, 1100 Laurel Street, Columbia, South Carolina

Within fourteen (14) days after service of the attached Motion, and the Notice of Motion, accompanied by the movant's Certification of Facts, (and a blank Certification of Facts form, applicable only to motions for relief from the automatic stay and service on *pro se* parties only), any party objecting to the relief sought shall:

(1)     File with the Clerk of this Court a written objection to the §362 Motion;

(2)     File with the Clerk of this Court a Certification of Facts;

(3)     Serve on the movant items 1 & 2 above at the address shown below; and

(4)     File a certificate of such service with the Clerk of this Court.

Should you fail to comply with this procedure, you may be denied the opportunity to appear and be heard on this proceeding before the court.

| | | |
|---|---|---|
| [1]DATE OF ISSUANCE: | | November 10, 2015 |
| [2]MOVANT: | | Trustmark National Bank |
| ATTORNEY(S): | | Edward L. Grimsley, Dist. Ct. ID # 5652 |
| ATTORNEY'S ADDRESS: | | Grimsley Law Firm, LLC |
| | | P.O. Box 11682 |
| | | Columbia, SC 29211 |

TO:  PARTY FILING MOTION FOR RELIEF FROM AUTOMATIC STAY (11 USC §362)
    Please refer to Federal Rules of Bankruptcy Procedure 4001(a) and Operating Order 95-4 for specifics of your responsibilities for <u>service</u> and filing of documents, including the above notice of hearing, related to your motion for relief from the automatic stay (11 USC §362).
    Please note that the Operating Order 95-4 provides for any party failing to comply with the procedures specified in the rule to be denied the opportunity to appear and be heard before the court and to be subject to sanctions pursuant to Local Rule 9011.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re: | ) |
| | ) Case No. 15-4395-jw |
| LUCILLE BROWN JENKINS, | ) Chapter 13 |
| | ) |
| Debtor. | ) |
| | ) |

### MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### AND MEMORANDUM IN SUPPORT OF MOTION

Trustmark National Bank ("Movant") hereby requests the court to enter its order granting Movant's motion for relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1)[1].

#### Facts

On or about April 24, 2014, Lucille Brown Jenkins (the "Debtor") and Joyce A. Jenkins received a loan (the "Loan") which Loan is secured by real property located at 1022 Skardon St., Sumter, County of Sumter, South Carolina (the "Collateral") on which Movant has a secured lien.

On August 19, 2015, the Debtor filed her petition for relief pursuant to Chapter 13 of the United States Bankruptcy Code.

The Debtor's Chapter 13 Plan was confirmed on November 5, 2015 (the "Plan"). The Plan provided that regular monthly payments under the Loan would continue to be made directly by the Debtor to Movant beginning September 2015.

The Debtor is now in default for failure to make the payments as required by the Plan and under the Loan. The total amount of arrearage as of November 5, 2015, is $3,120.00

#### Discussion

Section 362(d)(1) provides for relief from the automatic stay "for cause, including lack of adequate protection of an interest in property of such party in interest." The Movant's interest in the Collateral is not adequately protected due to the Debtor's failure to make the required payments under the Plan and due to the continuing depreciation of the Collateral.

Additionally, lack of adequate protection is only one cause for relief and not the only cause. In re Rye, 54 B.R. 180, 181 (Bankr. D.S.C. 1985). A material default under a confirmed plan may also constitute "cause" for lifting the automatic stay. In re Quinlan, 12 B.R. 516 (Bankr. W.D.Wis.

---

[1]    Further references to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., shall be referenced by section number only.

1981).  In Quinlan, the court found that the debtor's failure to make payments directly to a creditor as required by a confirmed plan constituted "cause" for the lifting of the automatic stay.  See also, In re Ellis, 60 B.R. 432 (9th Cir. BAP 1985).  The Debtor has failed to make payments to Movant as required by the Plan.  Therefore, Movant requests that the Court grant its motion for relief from the automatic stay to pursue its state law remedies pursuant to §362(d)(1) because its interest in the Collateral is not adequately protected and the Debtor has materially defaulted under the confirmed Plan.

Movant agrees to waive any claim that may arise under 11 U.S.C. Section 503(b) or Section 507(b) as a result of this Motion.  Movant further agrees that any funds realized from the disposition of the collateral, in excess of all liens, costs, and expenses, will be paid to the Trustee.

WHEREFORE, Movant requests that the Court to enter its order granting Movant relief from the automatic stay pursuant to §362(d)(1) to pursue its state law remedies against the Collateral, waiving the delay provided in Rule 4001(a)(3), and granting such other and further relief as this court deems as just and appropriate.

Grimsley Law Firm, LLC
Post Office Box 11682
Columbia, South Carolina 29211
egrimsley@grimsleylaw.com
(803) 233-1177

By:        _____
           Edward L. Grimsley, Dist. ID No. 5652
           Attorney for Trustmark National Bank

Columbia, South Carolina
November 10, 2015

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| LUCILLE BROWN JENKINS, | ) | Case No. 15-4395-jw |
| | ) | Chapter 13 |
| | ) | |
| | ) | **CERTIFICATION OF FACTS** |
| Debtor. | ) | |
| | ) | |

In the above-entitled proceeding, in which relief is sought from the automatic stay in accordance with 11 U.S.C. § 362, I do hereby certify to the best of my knowledge, the following:

1. <u>Nature of Movant's Interest</u>:  Trustmark National Bank ("Movant"), is a secured lender on the Debtor's real property located at 1022 Skardon St., Sumter, County of Sumter, South Carolina.

2. <u>Brief Description of Security Interest, copy attached (if applicable)</u>:  A copy of the Loan is attached hereto as <u>Exhibit A</u>.

3. <u>Description of Property Encumbered by Stay (Include serial number, lot and block number, etc.)</u>:  1022 Skardon St., Sumter, County of Sumter, South Carolina as provided in the Legal Description which is attached hereto as <u>Exhibit B</u>.

4. <u>Basis for Relief (property not necessary for reorganization, Debtor has no equity, property not property of estate, etc.; include applicable subsection of § 362</u>:  Movant requests relief pursuant to § 362(d)(1) for "cause" because Movant's interest in the collateral is not adequately protected.

5. <u>Prior Adjudication by Other Courts, copy attached (Decree of foreclosure, Order for possession, levy of execution, etc., if applicable)</u>:

6. <u>Valuation of Property, copy of valuation attached (appraisal, blue books, etc.)</u>:

| | |
|---|---|
| Fair Market Value | $      155,671.00 |
| Liens | $      160,537.90 |
| Equity Before Exemption | $      0.00 |
| Debtor's Exemption | $      6,035.57 |
| Net Equity | $      0.00 |

Source/Basis of Value                    <u>Debtor's Schedules</u>

7. <u>Amount of Debtor's estimated equity (using figures from paragraph 6, supra)</u>:  $0.00

8.    <u>Month and Year in Which First Direct Post-Petition Payment Came Due to Movant (if applicable)</u>:  September 2015

9.    (a)    For Movant/Lienholder (if applicable): List or attach a list of all post-petition payments received directly from debtor(s), clearly showing date received, amount, and month and year for which each such payment was applied[1].

| <u>Date Received</u> | <u>Amount Received</u> | <u>Month and Year Applied</u> |
|---|---|---|
| No payments received | | |

(b)    <u>For Objecting Party (if applicable): List or attach a list of all post-petition payments included in the Movant's list form (a) above which objecting party disputes as having been made.  Attach written proof of such payments(s) or a statement as to why such proof is not available at the time of filing this objection.</u>

10.    <u>Month and Year for Which Post-Petition Account of Debtor is Due as of the Date of this Motion</u>:  September 2015

GRIMSLEY LAW FIRM, LLC
Post Office Box 11682
Columbia, SC 29211
egrimsley@grimsleylaw.com
(803) 233-1177

By:_____
Edward L. Grimsley, Dist. Court ID No. 5652
Attorney for Trustmark National Bank

November 10, 2015
Columbia, South Carolina

---

[1]  This requirement may not be met by the attachment of a payment history generated by the movant.  Such attachment may be utilized as a supplement to a complete and detailed response to (9)(a) above, which should be shown on this certification.

# EXHIBIT A

Loan No                                                          MIN

# NOTE

FHA CASE NO.

April 24, 2014
[Date]

1022 SKARDON ST
SUMTER, SC  29154

[Property Address]

## 1.  PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
**Trustmark National Bank**

and its successors and assigns.

## 2.  BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **One Hundred Fifty One
Thousand Two Hundred Ten and no/100**
plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan
proceeds by Lender, at the rate of **Three and Seven Eighths**         percent (    3.8750 %) per year until the full amount of
principal has been paid.

Dollars (U.S. $ 151,210.00      ),

## 3.  PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

## 4.  MANNER OF PAYMENT

### (A)  Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
**June 01, 2014**            . Any principal and interest remaining on the first day of      **May 2044**          . will be due on
that date, which is called the "Maturity Date."

### (B)  Place

Payment shall be made at **Trustmark National Bank, P.O. Box 23072, Jackson, MS  39225**

or at such other place as Lender may designate in writing by notice to Borrower.

### (C)  Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ **711.05**          . This amount will be part
of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the
order described in the Security Instrument.

---

6/96

GreatDocs®
(Page 1 of 3)

**(D)  Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note. the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Growing Equity Allonge      ☐ Graduated Payment Allonge

☐ Other [specify]

## 5.  BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6.  BORROWER'S FAILURE TO PAY

**(A)  Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **Four**                                 percent (   **4.0000**%) of the overdue amount of each payment.

**(B)  Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee. .

**(C)  Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7.  WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

MULTISTATE FHA FIXED RATE NOTE

*J a J*

*L  B J*

6/96

GreatDocs®
(Page 2 of 3)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_Lucille B Jenkins_ _____ (Seal)
**LUCILLE B. JENKINS**                     -Borrower

_Joyce A. Jenkins BY_ _____ (Seal)
**JOYCE A. JENKINS By AIF Lucille B.**      -Borrower
**Jenkins**
_A/F Lucille B Jenkins_

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

*[Sign Original Only]*

**Originator Names and Nationwide Mortgage Licensing System and Registry IDs:**
Organization: **Metro Mortgage Corporation**                    NMLSR ID

                **Trustmark National Bank**

Individual: **Martha Neal**                                     NMLSR ID

MULTISTATE FHA FIXED RATE NOTE                                                 6/96

MULTISTATE
ITEM 6432L3 (112112)

GreatDocs®
(Page 3 of 3)

*Re- recal to Court*
*Spelling B Joyce A*
*Jenkins on signature*
*page*

Loan No. _____

C & C
13- 1294

After Recording Return To:
**Metro Mortgage Corporation**
**2001 Assembly Street, Suite 202**
**Columbia, SC  29201**

BOOK=1200  PAGE=005511

FILED,    RECORDED, INDEXED
04/28/2014      11:29:29 AM
REC. FEE:    15.00   CD FEE:           .00
STATE FEE:       .00   TOTAL FEES:    15.00
PAGES:         9
VICKI M. MCCARTHY - REGISTER OF DEEDS
SUMTER COUNTY BY: R. Carter

BOOK=1202  PAGE=005721

FILED,    RECORDED, INDEXED
07/09/2014      03:48:07 PM
REC. FEE:    15.00   CD FEE:           .00
STATE FEE:       .00   TOTAL FEES:    15.00
PAGES:         9
VICKI M. MCCARTHY - REGISTER OF DEEDS
SUMTER COUNTY BY: M. Dye

———————————————————— [Space Above This Line For Recording Data] ————————————————————

# MORTGAGE

| FHA CASE NO. |
| --- |

MIN ·············

THE MORTGAGE ("Security Instrument") is given on    **April 24, 2014**    . The mortgagor is **LUCILLE B.**
**JENKINS and JOYCE A. JENKINS By AIF Lucille B. Jenkins**

("Borrower"). This Security Instrument is given to
Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS is a separate corporation that is acting solely as nominee for
Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized
and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS. **Trustmark National Bank**

("Lender") is organized and existing
under the laws of **Mississippi**                                                                                          , and
has an address of **P.O. Box 23072, Jackson, MS  39225**

. Borrower owes Lender the principal sum of
**One Hundred Fifty One Thousand Two Hundred Ten and no/100**
Dollars (U.S. **$151,210.00**         ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument
("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **May 01, 2044**      .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect
the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee
for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property
located in **Sumter**                                                          County, South Carolina:

**SOUTH CAROLINA FHA MORTGAGE**                                                                                 6/96

*J a J*
*L B J*

GreatDocs®
(Page 1 of 8)

which has the address of                    **1022 SKARDON ST**
                                                  [Street]

**SUMTER**                    , South Carolina    **29154**        ("Property Address").
[City]                                             [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Sec. 2601 et seq. and implementing regulations, 12 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall deal with the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items

SOUTH CAROLINA FHA MORTGAGE                                                      6/96

SOUTH CAROLINA-MERS
ITEM 2636L2 (1113112)                                          GreatDocs®

(a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

    **3.  Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

- FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
- SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
- THIRD, to interest due under the Note;
- FOURTH, to amortization of the principal of the Note; and
- FIFTH, to late charges due under the Note.

    **4.  Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

    In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    In the event of foreclosure of this Security Instrument or other transfer of title to the Property that distinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

    **5.  Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

    **6.  Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    **7.  Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

SOUTH CAROLINA FHA MORTGAGE                                          6/96

SOUTH CAROLINA-MERS
ITEM 25351.2 (4104)

GreatDocs®
(Page 3 of 8)

BOOK= 1200 PAGE5514
BOOK= 1202 PAGE5724

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

    **8.**   **Fees.** Lender may collect fees and charges authorized by the Secretary.

    **9.**   **Grounds for Acceleration of Debt.**

      **(a)**   **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii)   Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

      **(b)**   **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii)   The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

      **(c)**   **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

      **(d)**   **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

      **(e)**   **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within        from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to        from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

    **10.**   **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**SOUTH CAROLINA FHA MORTGAGE**

SOUTH CAROLINA-MERS
ITEM 2635L4 (112113)

GreatDocs®

BOOK: 1200 PAGE5515
BOOK: 1202 PAGE5725

11.  **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.  **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13.  **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14.  **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end, the provisions of this Security Instrument and the Note are declared to be severable.

15.  **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16.  **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17.  **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender agents. However, prior to Lender notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

SOUTH CAROLINA FHA MORTGAGE                                                      6/96

BOOK: 1200 PAGE5516
BOOK: 1202 PAGE5726

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence, all of which shall be additional sums secured by this Security Instrument.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. Homestead Waiver.** Borrower waives all rights of homestead exemption in the Property to the extent allowed by applicable law.

**21. Waiver of Appraisal Rights.** The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may within 30 days after the sale of the mortgaged property apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. TO THE EXTENT PERMITTED BY LAW, THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY. This waiver shall not apply so long as the Property is used as a dwelling place as defined in § 12-37-250 of the South Carolina Code of Laws.

**22. Future Advances.** The lien of this Security Instrument shall secure the existing indebtedness under the Note and any future advances made under this Security Instrument up to 150% of the original principal amount of the Note plus interest thereon, attorneys' fees and court costs.

**23. Riders to This Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider                 ☐ Graduated Payment Rider       ☐ Growing Equity Rider

☐ Planned Unit Development Rider     ☐ Adjustable Rate Rider          ☐ Rehabilitation Loan Rider

☐ Non-Owner Occupancy Rider         ☐ Other [Specify]

BOOK: 1200 PAGE5517

BOOK: 1202 PAGE5727

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Lucille B Jenkins_ _____ (Seal)   AIF _Joey a Jenkins By Jay_ _____ (Seal)
**LUCILLE B. JENKINS**          -Borrower   _Lucille Jenkins_                              -Borrower
                                            **JOYCE A. JENKINS By AIF Lucille B.**
                                            **Jenkins**

                                            _Joyce a Jenkins_
                                            _By Lucille B Jenkins_
                                            _as attorney N Fact_
_____ (Seal)   _____ (Seal)
                          -Borrower                             -Borrower


_____ (Seal)   _____ (Seal)
                          -Borrower                             -Borrower


Signed, sealed and delivered in the presence of:

_Retta Sanders_ _____   _Warren Curtis_ _____
Print _Retta Sanders_                 **Warren S. Curtis**


SOUTH CAROLINA FHA MORTGAGE                                          6/96

SOUTH CAROLINA-MERS
ITEM 26353 7 (11191102)                                             GreatDocs®
                                                                   (Page 7 of 8)

BOOK= 1200 PAGE5518
BOOK= 1202 PAGE5728

State of South Carolina
County of **Sumter**

I **Warren S. Curtis, Notary**                                              (name and title), do hereby certify that
**LUCILLE B. JENKINS, JOYCE A. JENKINS By AIF Lucille B. Jenkins**

personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal (where required by law) this the **24th** day of **April 2014**

_Warren Curtis_
Notary Public for South Carolina



My commission expires: **7/27/2016**

WARREN S. CURTIS
NOTARY PUBLIC FOR SOUTH CAROLINA
MY COMMISSION EXPIRES 07-27-2016

Originator Names and Nationwide Mortgage Licensing System and Registry IDs:
Organization: **Metro Mortgage Corporation**                              NMLSR IL

**Trustmark National Bank**

Individual: **Martha Neal**                                               NMLSR ID

J a J
L B J

SOUTH CAROLINA FHA MORTGAGE                                              6/96

SOUTH CAROLINA-MERS
ITEM 9626L8 (1104.10)

GreatDocs®
(Page 8 of 8)

BOOK=1211 PAGE=003541

Return To:
TRUSTMARK NATIONAL BANK
Foreclosure Department.
201 Country Place Parkway,
Pearl, MS 39208-6689

FILED: RECORDED, INDEXED
05/26/2015    08:44:34 AM
REC. FEE:      6.00    CO FEE:        .00
STATE FEE:      .00    TOTAL FEES:    6.00
PAGES:         1
VICKI M. MCCARTHY - REGISTER OF DEEDS
SUMTER COUNTY BY: V. McCarthy

MIN #
MERS Phone # 888-679-6377

---

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, **Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Trustmark National Bank**, its successors and assigns, whose address is P.O. Box 2026, Flint, MI 48501-2026; Phone: 1-888-679-6377 ("Assignor"), the sole owner and holder of the mortgage dated 4/24/2014 ("Mortgage") from **LUCILLE B. JENKINS AND JOYCE A. JENKINS** to MERS securing a loan in the amount of One Hundred Fifty-One Thousand Two Hundred Ten and no/100 Dollars ($151,210.00), which Mortgage is recorded in **Book 1200** at **Page 5511** and re-recorded in **Book 1202** at **Page 5721** of the Office of the Register of Deeds for Sumter County, South Carolina, does hereby transfer and assign all its right, title and interest in and to said Mortgage to **TRUSTMARK NATIONAL BANK**, its successors and assigns, whose address is Mortgage Real Estate Dept., The Day Centre, 201 Country Place Parkway, Pearl, MS 39208-6689 ("Assignee").

Mortgagors:          **Lucille B. Jenkins and Joyce A. Jenkins**
Date of Mortgage:    **4/24/2014**
Mortgage Filed:      **4/28/2014**
Book / Page:         **1200 / 5511**
Mortgage ReRecorded: **7/09/2014**
Book / Page:         **1202 / 5721**
Property Address:    **1022 Skardon Street, Sumter, South Carolina 29154**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated: May 8, 2015

Witness 1: Calvin Murrell

Witness 2: Wanda M Smith

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
April Bodry, Assistant Secretary to MERS

STATE OF MISSISSIPPI
COUNTY OF RANKIN

On May 8, 2015, before me, Jaime McNeece, Notary Public, personally appeared **APRIL BODRY, Assistant Secretary to MERS**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

STATE OF MISSISSIPPI
JAIME McNEECE
NOTARY PUBLIC
ID No. 93933
MY COMMISSION EXPIRES
AUG. 17, 2017
RANKIN COUNTY

Notary Public: Jaime McNeece
My Commission Expires: 8/17/17

Prepared by:
GRIMSLEY LAW FIRM, LLC
P.O. Box 11682
Columbia, SC 29211

**EXHIBIT B**

BOOK: 1200 PAGE5519
BOOK: 1202 PAGE5729

Legal

All that certain piece, parcel or lot of land with the improvements thereon, if any, situate, lying and being in the Township and County of Sumter, State of South Carolina, designated as Lot No. 141 of Beckridge Park, Section 7, as shown in Plat Book Z-41 at page 158, and more recently and particularly shown on a plat by Joseph R. Edwards, R.L.S., dated August 7, 1989, and recorded in the Office of the Register of Deeds for Sumter County in Plat Book PB89 at page 885. This said lot has such metes, boundaries, courses and distances as are shown on said plat, which are incorporated herein in accordance with the provisions of Section 30-5-250 of the Code of Laws of South Carolina, 1976. This being the same property known as 1022 Skardon Street, Sumter, South Carolina and is shown on the Auditors map of Sumter County as Tax Parcel 207-07-04-007.

This being the identical property conveyed to Joyce A. Jenkins and Lucille B. Jenkins by deed of Marilyn F. Tiffault dated February 4, 2014 and recorded in the Office of the Register of Deeds for Sumter County in Book _1200_ , page _5506_ on April _28_ , April

Initial(s) _J a J  L B J_

Curtis & Croft 2013-1294

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re: | ) |
| | ) |
| LUCILLE BROWN JENKINS, | )   Case No. 15-4395-jw |
| | )   Chapter 13 |
| | ) |
| | ) |
| Debtor. | ) |
| _____ | ) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she caused copies of the MOTION **FOR RELIEF FROM THE AUTOMATIC STAY AND MEMORANDUM IN SUPPORT OF MOTION; CERTIFICATION OF FACTS; NOTICE OF MOTION SEEKING 11 U.S.C. §362(d) RELIEF; and CERTIFICATE OF SERVICE** filed in the above-captioned case, to be served via United States mail, first-class postage prepaid or electronically via CM/ECF, on the parties listed below this _____10th_____ day of November 2015:

**Debtor:**
Lucille Brown Jenkins
1022 Skardon St.
Sumter, SC 29154

**Attorney for Debtor:**
Paul L. Held, Esquire
PO Box 521
Sumter, SC 29150

**Trustee:**
William K. Stephenson, Jr.
(served electronically via CM/ECF)

Carrie R. Tinsley, Paralegal
Grimsley Law Firm, LLC
P.O. Box 11682
Columbia, South Carolina 29211
ctinsley@grimsleylaw.com
(803) 233-1177